2008 UT 3

**DEEP CREEK RANCH, LLC, Plaintiff, Appellee, and Cross–Appellant,**

v.

**UTAH STATE ARMORY BOARD, Utah National Guard, and John Does I through X, Defendants, Appellants, and Cross–Appellees.**

No. 20060107.

Supreme Court of Utah.

Jan. 15, 2008.

James E. Morton, Scott S. Kunkel, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Thom D. Roberts, Brent A. Burnett, Asst. Att'ys Gen., Salt Lake City, for defendants.

DURRANT, Justice:

## INTRODUCTION

¶ 1 Deep Creek Ranch, LLC ("Deep Creek") sued the Utah State Armory Board ("Armory"), seeking to enforce a contract for the sale of Deep Creek's land in exchange for government surplus property. After Deep Creek prevailed at trial, Armory brought this appeal, asserting the district court erred in holding that the term "surplus property" as used in the contract unambiguously refers to both federal and state surplus property. Armory contends that the term unambiguously refers only to federal surplus property. Armory further asserts that because the term refers only to federal property, the district court erred in ruling that the contract is not voidable for mistake of fact. Deep Creek cross-appeals the district court's ruling that its legal damages claim for lost profits is too speculative.

¶ 2 We conclude that the contract is ambiguous as to the term "surplus property" in that the intent of the parties cannot be ascertained from the four corners of the contract itself. Nevertheless, we affirm the district court's ruling that the contract is not voidable for mistake of fact. We conclude that Armory is liable regardless of the resolved meaning of the ambiguous term. As to damages, we remand to the district court to determine whether specific performance is possible. Because specific performance may be possible, it is premature for us to reach the issue of whether legal damages are too speculative.

## BACKGROUND

¶ 3 The undisputed facts are as follows. In June 1997 Armory entered into a contract to purchase a 780–acre parcel of land (the "ranch") in southwestern Tooele County from Deep Creek. Instead of cash, Armory agreed to provide $850,000 "in the form of a Credit to acquire Surplus Property through Utah State Agency for Surplus Property in compliance with the Federal Property and

Administrative Services Act of 1949 as amended." In this and other clauses, the contract uses the term "surplus property" without specifically defining it. The contract authorizes Deep Creek "to screen any Surplus Property available to the State of Utah through DRMO, GSA and/or any other State or Federal surplus agency available to the State of Utah."[1] The contract also contains a formula for determining how the value of surplus property selected by Deep Creek will be charged against the $850,000 credit. In the contract, Armory "represents that it is authorized to cause the transfer of Surplus Property, described herein, to Seller free and clear of any liens, encumbrances and/or restrictions." Both Deep Creek management and several Utah officials on behalf of Armory, including then-Governor Michael O. Leavitt, signed the contract.

¶ 4 Prior to the execution of the contract, Armory showed representatives of Deep Creek surplus property so that Deep Creek could assess the value of the credits. Armory showed Deep Creek both federal and state surplus property. The Utah State Surplus Property Agency, a part of the Division of General Services of the State of Utah, administers the collection and auction of both federal and state surplus property. Following the execution of the contract, Armory learned that the GSA would not approve the use of federal surplus property to purchase the ranch.

¶ 5 Armory refused to close on the appointed date, claiming that because it had not received approval from the GSA to use federal surplus property, it could not complete the transaction. Deep Creek sued to enforce the contract. Deep Creek moved for summary judgment on the issue of liability, arguing that the contract could still be performed using state surplus property. Armory argued that the contract unambiguously calls for the use of only federal surplus property and, because federal surplus property is not available, the contract is voidable for mistake of fact. Deep Creek argued that the contract unambiguously allows Armory to satisfy its obligation with either state or federal surplus property and that Armory should be required to provide alternative performance with state surplus property if federal property is unavailable.

¶ 6 The district court issued a memorandum decision granting Deep Creek's Motion for Summary Judgment. The court held that the contract term "surplus property" is clear and unambiguous and relates to both federal and state surplus property, but because no federal official had signed the contract, Deep Creek's remedy may be obtained only from state surplus property. Furthermore, the district court held that Armory is liable for breach of contract.

¶ 7 Armory appealed, but the court of appeals determined that it lacked jurisdiction because the decision was not a final appealable judgment. The court of appeals remitted the matter back to the district court for a trial to determine compensatory and consequential damages as well as attorney fees. In the interim, a new district court judge was assigned to the case.

¶ 8 Prior to the trial, the newly assigned district court judge ruled that Deep Creek had sought and elected the remedy of specific performance, but that if specific performance proved impossible, Deep Creek could also seek legal damages as an alternative remedy. At trial, Deep Creek presented evidence of its legal damages, including figures from the sales of state surplus property vehicles.

¶ 9 In a memorandum decision, the newly assigned judge adopted all of the previous judge's legal conclusions as to contract construction and liability but found that the parties primarily intended to use federal surplus property. The district court went on to award consequential damages including damages for taxes and insurance paid on the property, loan interest, and attorney fees. The court reaffirmed that Deep Creek is entitled to specific performance but made no finding as to whether specific performance is possible. Finally, it ruled that, in the event specific performance is impossible, legal

---

1. DRMO refers to the federal Defense Reutilization and Marketing Office, and GSA refers to the federal General Services Administration. Neither entity nor any other federal entity is a party to the contract.

damages for lost profits are too speculative. Armory appeals the district court's holdings that the contract unambiguously refers to state and federal surplus property and that the contract is not voidable due to a mistake of fact. Deep Creek cross-appeals the district court's holding that legal damages are too speculative. We have original jurisdiction pursuant to Utah Code section 78-2-2(3)(j)(2002).

## STANDARD OF REVIEW

¶ 10 Whether a contractual term is ambiguous is a question of law that we review for correctness.[2] The issue of mistake of fact involves factual determinations and conclusions of law. We review factual determinations for clear error and conclusions of law for correctness.[3]

## ANALYSIS

¶ 11 Armory raises two issues on appeal. First, Armory asserts that the district court erroneously held that the contractual term "surplus property" unambiguously includes both state and federal property. Second, Armory asserts that because the contract calls for Armory to provide only federal surplus property, the district court should have declared the contract voidable for mistake of fact. We will discuss each assertion of error in turn. Following this discussion, we will turn to the issue of remedies.

## I. THE CONTRACTUAL TERM "SURPLUS PROPERTY" IS AMBIGUOUS

¶ 12 In the proceedings below, Armory argued that the term "surplus property" is unambiguous on its face and clearly shows the parties' intent to use only federal surplus property to satisfy the contract. Deep Creek, on the other hand, argued that the term unambiguously evinces the parties' intent to use both federal and state surplus property. The district court ruled that the term is unambiguous and refers to both state and federal property. Further, it held that Armory is liable for breach of contract for failing to provide either state or federal surplus property to Deep Creek. We examine these legal conclusions for correctness.

¶ 13 A contractual term is ambiguous if, looking to the language of the contract alone, it is reasonably capable of being understood in more than one way such that there are tenable positions on both sides.[4] While the contract does not explicitly define the term "surplus property," it calls for Armory to provide to Deep Creek "Credit to acquire Surplus Property in compliance with the Federal Property and Administrative Services Act of 1949 as amended." The Federal Property and Administrative Services Act of 1949[5] (the "Act") is only applicable to federal surplus property.[6] Nevertheless, it does not follow that "surplus property" as used in the contract necessarily refers only to federal property; the reference to the Act might apply to federal property used to satisfy the contract only to the extent that federal property is used. Any state surplus property used would not be out of compliance with the Act because it is not subject to the Act.

¶ 14 Deep Creek points to paragraph 2(a) of the contract, which permits Deep Creek "to screen any Surplus Property available to the State of Utah through DRMO, GSA and/or any other State or Federal surplus agency available to the State of Utah." Deep Creek argues that because both federal and state agencies are listed, it is clear that both federal and state surplus property may be used. But the Act requires states to designate a state agency to handle transfers of

**2.** *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 14, 133 P.3d 428.

**3.** *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶¶ 26–28, 164 P.3d 384.

**4.** *Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990).

**5.** Pub.L. No. 81–152, 63 Stat. 377 (codified as amended in scattered sections of 40, 41, & 44 U.S.C.).

**6.** 40 U.S.C. § 101 (2005).

federal surplus property to state agencies.[7] Thus, the phrase could reasonably mean federal surplus property that is handled by the designated state agency and not necessarily state surplus property.

¶ 15 Clearly, there are tenable positions on both sides, and the language within the four corners of the contract is insufficient to resolve the issue. As a matter of law, therefore, the term "surplus property" is ambiguous on its face, and the lower court erred in ruling that the term is unambiguous.

¶ 16 Because the language of the contract is unclear as to the meaning of "surplus property," the intent of the parties must be ascertained from extrinsic evidence.[8] The district court, having ruled as a matter of law that the contract is unambiguous, did not make this determination. We therefore remand for it to do so. As we explain in the sections that follow, while the resolution of this factual issue is not necessary to establish whether Armory is liable, it does bear on whether specific performance is possible.

## II. THE CONTRACT IS NOT VOIDABLE FOR MISTAKE OF FACT

¶ 17 Armory asserts that if "surplus property" refers only to federal surplus property, the district court should have declared the contract voidable for mistake of fact. Armory argues that both parties were mistaken as to the availability of federal surplus property with which to satisfy Armory's obligation under the contract. We disagree with Armory's reasoning. Even if Armory is able to show on remand that only federal surplus property was intended, mistake about a future contingency—in this case Ar-

mory's ability to obtain approval from the GSA to use federal surplus property—does not make a contract voidable for mistake of fact. To serve as a basis for voiding a contract, the mutual mistake must concern a past or existing fact, not a future contingency.

A party may rescind a contract when, at the time the contract is made, the parties make a mutual mistake about a material fact, the existence of which is a basic assumption of the contract. If the parties harbor only mistaken expectations as to the course of future events and their assumptions as to facts existing at the time of the contract are correct, rescission is not proper. This rule is justified by the reality that parties to commercial contracts rarely predict future events with total accuracy. Indeed, a contract often functions primarily to insulate the parties from uncertainty and to allocate the risk of future events.[9]

¶ 18 If there was a mutual mistake in this case, it was as to whether the GSA would approve the use of federal property. The GSA informed Armory after the contract was signed that it would not approve the transaction. At the time the contract was entered into, Armory, under the terms of the contract, assumed the risk as to the GSA's subsequent approval.

¶ 19 A contract functions in part to apportion risk of future events between the contracting parties. Moreover, parties are free to allocate the risk of future events between them however they wish. In this case, Armory was aware that it needed approval from the GSA before it could use federal property.[10] It could have made its

---

7. 40 U.S.C. § 549(a)(3), (f).

8. *Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.*, 899 P.2d 766, 770 (Utah 1995).

9. *Mooney v. GR & Assocs.*, 746 P.2d 1174, 1178 (Utah Ct.App.1987) (quotation marks and citation omitted); *see also Blackhurst v. Transamerica Ins. Co.*, 699 P.2d 688, 692 (Utah 1985) (refusing to "nullify a settlement contract because one of the parties would have acted differently if all the future outcomes had been known at the time of the agreement").

10. The Federal Property and Administrative Services Act of 1949 states that any purchase of surplus property by a nongovernmental entity is subject to prior approval of the GSA. 40 U.S.C. § 549(b)(1950).

> Where the approval of [the GSA] is required, no error, oversight or mistake by anyone can excuse an omission to obtain it. Without its approval of the disposition of government property subject to said statutes, a red light is set preventing a consummation of any such transaction. Only by the procurement of such approval can such a transaction, if otherwise lawful, proceed on a green light to consummation.

contractual liability contingent on receiving approval from the GSA, but it did not. On the contrary, Armory explicitly warranted its ability to cause the transfer of the surplus property in the third paragraph of the contract: "[Armory] represents that it is authorized to cause the transfer of Surplus Property, described herein, to Seller free and clear of any liens, encumbrances and/or restrictions." By including this warranty and neglecting to make the contract contingent on approval from the GSA, Armory assumed the risk of being held liable if the GSA did not approve the transaction.

¶ 20 Thus, even if we accept Armory's argument that the contractual term "surplus property" refers only to federal surplus property, Armory is liable for breach of contract. Accordingly, the resolution of the parties' intended meaning of "surplus property" is not necessary in order to determine liability. We affirm the district court's ruling that the contract is not voidable for mistake of fact and that Armory is liable for breach of contract. We now turn to Deep Creek's available remedies.

## III. DEEP CREEK'S REMEDIES DEPEND ON RESOLUTION OF THE CONTRACTUAL AMBIGUITY

¶ 21 Having affirmed the district court's ruling that Armory is liable for breach of contract, we now consider Deep Creek's remedies. We begin by discussing specific performance in light of our ruling that the contractual term "surplus property" is ambiguous. Because the possibility of specific performance—unlike the issue of liability—is dependent on the resolution of the meaning of "surplus property," we remand to the district court to determine the term's meaning. Further, because specific performance—Deep Creek's elected remedy—may be possible, it is premature for us to reach the issue on cross-appeal of whether legal damages are too speculative. Finally, Armory did not appeal the district court's award of consequential damages in the event it is liable. Because, as discussed above, Armory is liable for breach of contract, Armory is obligated to pay Deep Creek for these damages

plus additional accrued interest, fees, and costs attendant to this appeal and any further proceedings.

### A. Specific Performance

1. Deep Creek Elected the Remedy of Specific Performance

¶ 22 Prior to trial, the district court ruled that Deep Creek, "by seeking and obtaining a judgment of specific performance, made an election of its remedies and this proceeding henceforth is limited to the claim of specific performance." The district court, however, further ordered that "trial should also proceed at the same time on [Deep Creek's] claim for the alternative remedy of legal damages in the event the remedy of specific performance proves impossible." Deep Creek did not challenge this ruling on appeal and is therefore restricted to seeking specific performance unless specific performance proves impossible.

2. The Possibility of Specific Performance Depends on the Meaning of the Contractual Term "Surplus Property"

¶ 23 Although the district court noted that specific performance might be impossible, it did not resolve the issue at trial. As to this issue, resolving the meaning of the term "surplus property" becomes relevant. Specific performance may or may not be possible depending, in part, on whether the contract requires that Armory convey only federal surplus property or that it convey either state or federal surplus property.

¶ 24 If the parties intended the term "surplus property" to mean only federal property, specific performance is impossible. Both parties have conceded this to be the case. Therefore, if on remand the district court determines that "surplus property" was intended by the parties to mean only federal surplus property, specific performance is impossible and Deep Creek may seek legal damages.

¶ 25 If, on the other hand, "surplus property" was intended by the parties to mean both state and federal property, the possibility of

specific performance remains an open factual question. While it has been established that it would be impossible for Armory to satisfy its contractual obligation through the provision of federal surplus property, it may be able to do so through the provision of state surplus property. But it has not been determined whether Armory has the authority to transfer state surplus property. Armory argues that state surplus property put up for sale at auction and the proceeds from such sales remain the property of the state agency from which they came. If the district court determines that "surplus property" was intended by the parties to mean state and federal property, it must determine whether it is possible for Armory to deliver state surplus property to perform the contract.

¶ 26 In short, once the district court has determined, by resolving what the parties intended by the term "surplus property," what performance is required of Armory under the contract, it must determine whether such performance is possible. If and only if such specific performance is impossible may Deep Creek seek general legal damages.

3. The District Court Must Look to Extrinsic Evidence of the Parties' Intent

■ ¶ 27 In considering the meaning of "surplus property" the district court on remand must look to extrinsic evidence of the parties' intent. "[W]hen a contract provision is ambiguous because it is susceptible to more than one reasonable interpretation due to uncertain meaning of terms, missing terms, or other facial deficiencies, extrinsic evidence is admissible to explain the intent of the parties." [11] Because the district court rested its decision on the holding that, as a matter of law, the contract referred to both state and federal property, we are not convinced that the issue received a full evidentiary airing. Accordingly, on remand, the district court may rely on evidence presented at the first trial but should allow the parties an opportunity to present additional evidence in this regard.

### B. Legal Damages

■ ¶ 28 The district court allowed Deep Creek to present evidence of legal damages for lost profits in the event specific performance is impossible. Deep Creek produced evidence of the auction sales of state surplus property vehicles during the actual three years it was entitled to the surplus property credits. The district court found that this evidence did not prove Deep Creek's legal damages to a reasonable certainty. It ruled that legal damages for lost profits were too speculative because Deep Creek had never operated a surplus property business in the past and did not have a track record of similar past sales. Deep Creek challenges this ruling on cross-appeal.

¶ 29 Appellate review of this issue would be premature at this time. If the district court determines that specific performance is possible, it will be unnecessary to resolve the issue of whether legal damages for lost profits are too speculative. In addition, the measure of legal damages may vary depending on whether Deep Creek was promised only federal surplus property or state and federal surplus property. Therefore, the issue of whether Deep Creek has proven legal damages to a reasonable certainty cannot be resolved until the district court determines what the parties intended by the term "surplus property." Accordingly, as a predicate to appellate review, the district court must first decide, if necessary and in light of its resolution of the contractual ambiguity, the question of whether Deep Creek has proven legal damages to a reasonable certainty.

### C. Consequential Damages

¶ 30 Prior to trial, the district court ordered that trial should proceed "on any claims of [Deep Creek] with regard to equitable damages, being those damages flowing from the delay in performing the contract ... including a claim for attorney's fees." The district court awarded Deep Creek damages for loan interest, insurance, taxes, expenses, and attorney fees. Armory has not specifically challenged the award of these damages on appeal, arguing only that it is not liable for breach of contract. Because we

11. *Willard Pease Oil & Gas Co. v. Pioneer Oil &* *Gas Co.,* 899 P.2d 766, 770 (Utah 1995).

hold that Armory is liable for breach of contract, Armory is obligated to pay Deep Creek for these damages plus additional accrued interest, fees, and costs attendant to this appeal and any further proceedings.

## CONCLUSION

¶ 31 We reverse the district court's legal determination that "surplus property," as used in the contract, is unambiguous and remand for the district court to determine from extrinsic evidence whether the parties intended that Armory use state and federal surplus property or only federal surplus property to satisfy its obligation. But we affirm the district court's holding that the contract was not voidable for a mistake of fact; Armory is liable regardless of the resolved meaning of the ambiguous term "surplus property." We remand for resolution of the parties' intended meaning of the term from extrinsic evidence because the possibility of specific performance depends on the term's meaning. We decline to reach Deep Creek's cross-appeal on the issue of whether legal damages are too speculative because specific performance may be possible, and even if it is not possible, the issue of whether legal damages are too speculative depends on the resolution of the parties' intent as to "surplus property." Finally, we affirm the award of consequential damages including damages for taxes, insurance, and attorney fees, subject to augmentation for this appeal and further proceedings.

¶ 32 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.