2009 UT 2

**Stephen A. GIUSTI, Plaintiff, Appellant, and Cross–Appellee,**

v.

**STERLING WENTWORTH CORPORATION, a Utah corporation; SunGard Data Systems; John Hyde; and Paul Erickson; Defendants, Appellees, and Cross–Appellants.**

Nos. 20070648, 20070720.

Supreme Court of Utah.

Jan. 16, 2009.

968

Kathryn Collard, Salt Lake City, for plaintiff.

Lois A. Baar, Cecilia M. Romero, Salt Lake City, Laurence S. Shtasel, Philadelphia, PA, for defendants.

## INTRODUCTION

¶ 1 Sterling Wentworth Corporation ("SWC") terminated Stephen A. Giusti's employment. Giusti sued, asserting six claims against SWC and its parent corporation SunGard: (1) fraudulent inducement, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) promissory estoppel (claims two through four, collectively, the "contract claims"), (5) tortious interference and defamation, and (6) intentional infliction of emotional distress.

¶ 2 Between January 2001 and November 2006, all of Giusti's claims were resolved. Giusti voluntarily dismissed his claim for intentional infliction of emotional distress. The district court dismissed defendant SunGard for lack of personal jurisdiction and, in a series of orders, granted SWC's motion for summary judgment on each of Giusti's remaining claims. The court then denied SWC's motion for attorney fees and limited its recovery of costs to $55.

¶ 3 Giusti appeals, claiming that the district court erred in dismissing SunGard for lack of personal jurisdiction and in granting summary judgment to SWC on each of his claims.

¶ 4 SWC asserts that Giusti's appeal was untimely and that we therefore lack jurisdiction to consider it. SWC also cross-appeals, claiming that the district court erred in denying it attorney fees and in limiting its recovery of costs to $55.

¶ 5 We conclude that Giusti's appeal was timely. We also hold that the district court was correct in granting summary judgment to SWC on each of Giusti's claims, and therefore, we do not reach the issue of whether SunGard was properly dismissed for lack of personal jurisdiction. We further conclude that the district court correctly denied SWC's claim for attorney fees and correctly limited its request for costs. We thus affirm each of the district court's decisions.

## BACKGROUND

¶ 6 In reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving party.[1] Applying that standard, we recite the facts as follows. In February 1999, SunGard, a computer software and services company incorporated in Delaware, purchased, as a wholly owned subsidiary, SWC, a Utah corporation located in Salt Lake City. During the fall of 1999, John Hyde and Paul Erickson—SWC's President and Vice President of Operations, respectively—recruited Giusti for the position of Vice President of Sales.

¶ 7 At the time of his recruitment, Giusti was employed as Senior Vice President of Marketing at Cambric Corporation in Salt Lake City. He had an annual base salary of $125,000, which was due to increase to $135,000 on January 1, 2000. He also had an $800 per month car allowance, other benefits, and had received the first $25,000 of a $100,000 performance bonus, the remainder to be paid in installments based on Cambric's financial performance and Giusti's performance.

¶ 8 Giusti claims that, during negotiations, he and Hyde orally agreed that Giusti would be guaranteed twelve months of employment at SWC and that this guaranty was incorporated into an offer letter ("November offer letter"). Giusti signed and returned the November offer letter to SWC and began work as Vice President of Sales on December 1, 1999.

¶ 9 According to Giusti, a few days after beginning work, Pat Black, the Human Resources Director at SWC, brought into Giusti's office the Sterling Wentworth Employment Agreement ("SWC employment agreement" or "employment agreement") for him to sign. The SWC employment agreement provided that Giusti's employment could be terminated at any time "with or without cause." Giusti claims that he told Black that this provision did not apply to him per his agreement with Hyde, and that, in reply, Black informed him that she had no knowledge of such an arrangement and that he was required to sign the form so she could process his benefit enrollment. Giusti signed the SWC employment agreement on December 6, 1999.

¶ 10 Giusti claims that, within his first two weeks of employment at SWC, he observed a high level of organizational chaos within the company and confronted Hyde, questioning him about his previous representations that SWC and its client revenue base were strong. Giusti asserts that, in response, Hyde promised him a new level of compensation. Hyde amended the November offer letter to reflect this change, and the change appeared in a letter dated December 13, 1999 ("December contract"). Where the November offer letter provided that Giusti would receive a "1% override of revenue produced by the sales people you manage," the December contract provided that he would receive "1% on corporate revenue." This change was handwritten on the December version of the November offer letter. Both parties initialed the change.

¶ 11 On April 26, 2000, Giusti indicated to SWC's financial personnel that he might exercise his one-time election to move from the monthly subsidy plan to the commission and override plan whereby he would receive a 1% override on all corporate sales as promised to him in the December contract. Within a few days, and after only five months of employment at SWC, Giusti's employment was terminated.

¶ 12 Giusti filed suit on July 10, 2000, claiming six causes of action against SWC and SunGard: (1) fraudulent inducement of employment, (2) breach of contract, (3) breach of the implied covenant of good faith

---

1. *See Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1182–83 (Utah 1989).

and fair dealing, (4) promissory estoppel, (5) tortious interference and defamation, and (6) intentional infliction of emotional distress.

¶ 13 Between January 2001 and November 2006, all six of Giusti's claims were resolved in SWC's favor. In January 2001, the district court dismissed defendant SunGard for lack of personal jurisdiction. In March 2002, the court granted SWC's motion for summary judgment on Giusti's three contract claims.[2] In April 2003, Giusti voluntarily dismissed his claim for intentional infliction of emotional distress. In September 2005, the court granted SWC's motion for summary judgment on Giusti's tortious interference and defamation claims. In November 2006, the court dismissed Giusti's claim for fraudulent inducement, his only remaining claim. The November 2006 order ("November order") was entitled "Order Granting Summary Judgment and Dismissal of Plaintiff's Complaint with Prejudice" and contained the following language:

> [H]aving made a Minute Entry/Order dated April 21, 2006, containing the Court's thinking and its decision on the matter, now, the Court HEREBY FINDS, ADJUDGES, and ORDERS AND DECREES that: Summary Judgment is GRANTED on Plaintiff's claim for fraudulent inducement and Plaintiff's Complaint, in its entirety, is DISMISSED WITH PREJUDICE.

¶ 14 The November order also provided that SWC could submit a request for attorney fees. In December 2006, SWC submitted its motion for attorney fees, and the court denied the request in a final order dated June 8, 2007 ("June order"). A separate judgment, combining the November and June orders, was entered on July 10, 2007 ("July judgment").

¶ 15 The parties dispute some of the events that followed the entry of the June order and led up to the entry of the July judgment.[3] It is undisputed that Giusti's counsel prepared for entry a final judgment combining the contents of the November and June orders. The district court entered that judgment on July 10, 2007. Giusti filed his notice of appeal on August 6, 2007.

¶ 16 SWC argues that Giusti's appeal was ripe as of June 8, 2007, the date of the final order denying attorney fees, because "Plaintiff's Complaint had already been dismissed in its entirety ... and Defendants' fee request had been denied." According to SWC, Giusti's appeal, filed on August 6, 2007—well over 30 days later—is therefore untimely.[4]

¶ 17 Giusti, on the other hand, contends that his appeal was timely because, according to Utah Rule of Civil Procedure 7(f)(2), the July judgment was necessary and the appeal period did not begin running until the July judgment was entered on July 10, 2007.

¶ 18 Because the parties dispute which decision—the June order or the July judgment—triggered the appeal period, as a threshold matter, we must address that question to determine whether Giusti's appeal was timely. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARDS OF REVIEW

¶ 19 "We review a district court's decision to grant summary judgment for correctness," giving no deference to the court below.[5] Summary judgment is appropriate if there is "no genuine issue as to any material

---

2. This ruling was confirmed in an order dated September 3, 2003.

3. Giusti's counsel, Kathryn Collard, submitted an affidavit with her brief. In it, she recounts her conversations with the district court clerks who, according to Collard, informed her that the judge wanted Collard to prepare the July order for entry. SWC claims that this affidavit should be stricken as beyond the record on appeal. In reaching our conclusion that Giusti's appeal was timely, we did not rely on the contents of that affidavit. Nor does the existence of the affidavit or its contents affect our analysis in any way.

Thus, we decline to reach the issue of whether the affidavit was beyond the record on appeal.

4. Utah Rule of Appellate Procedure 4(a) requires appeals to be filed "within 30 days after the date of entry of the judgment or order appealed from."

5. *Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122 (citation and internal quotation marks omitted); *see also Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 2, 137 P.3d 706.

fact and ... the moving party is entitled to judgment as a matter of law." [6]

■ ¶ 20 We review a district court's denial of attorney fees for correctness,[7] while we review a district court's denial of costs for abuse of discretion.[8]

## ANALYSIS

¶ 21 We first discuss whether Giusti's appeal was timely. Because we conclude that it was, we then discuss Giusti's claim that the district court erred in granting summary judgment to SWC on Giusti's (1) contract claims, (2) fraudulent inducement claim, and (3) tortious interference claim. We affirm the district court's grant of summary judgment on all issues, and we therefore do not reach Giusti's claim that the district court erred in dismissing SunGard for lack of personal jurisdiction.

¶ 22 Finally, we discuss the issues raised in SWC's cross-appeal: that the district court erred in denying SWC attorney fees and in limiting its recovery of costs to $55. We affirm the district court's decision on this issue as well.

## I. GIUSTI'S APPEAL WAS TIMELY

¶ 23 In arguing that his appeal was timely, Giusti relies on rule 7(f)(2) of the Utah Rules of Civil Procedure. That rule, along with our recent holding in *Code v. Utah Dep't of Health*,[9] establish that the July judgment was necessary, and therefore, Giusti's appeal was timely.[10]

¶ 24 Giusti contends that under rule 7(f)(2) his appeal was timely because the rule requires that a separate order—in addition to the November and June orders—be entered. Rule 7(f)(2) provides that

[u]nless the court approves the proposed order submitted with an initial memoran-

dum, or unless otherwise directed by the court, the prevailing party shall, within fifteen days after the court's decision, serve upon the other parties a proposed order in conformity with the court's decision. Objections to the proposed order shall be filed within five days after service. The party preparing the order shall file the proposed order upon being served with an objection or upon expiration of the time to object.[11]

¶ 25 Giusti argues that because "no order in conformity with the district court's [June order] was submitted by either party," the appeal period was not triggered until the entry of such an order in the form of the July judgment. The plain language of the rule, along with our decision in *Code*, support Giusti's argument.

¶ 26 Rule 7(f)(2) provides in pertinent part that "[u]nless the court approves the proposed order submitted with an initial memorandum, or unless otherwise directed by the court, the prevailing party shall ... serve upon the other parties a proposed order in conformity with the court's decision." [12]

¶ 27 The rule is clear. A prevailing party *shall* prepare for entry a proposed order in conformity with the court's decision. There are only two exceptions to this mandate. First, if the court approves a proposed order that is submitted with an initial memorandum, then no additional order is necessary. Second, if the court directs that no additional order is necessary, then none is.

¶ 28 In this case, neither exception was satisfied. No proposed order was submitted with an initial memorandum, and the court did not direct the parties that no additional order was necessary. The court did not, for example, tell the parties that its June order was final for purposes of appeal and that no

---

**6.** Utah R. Civ. P. 56(c).

**7.** *Paul deGroot Bldg. Servs., LLC v. Gallacher*, 2005 UT 20, ¶ 18, 112 P.3d 490.

**8.** *Young v. State*, 2000 UT 91, ¶ 4, 16 P.3d 549.

**9.** 2007 UT 43, ¶ 4, 162 P.3d 1097.

**10.** Giusti also argues that rule 54(b) of the Utah Rules of Civil Procedure applies to save his claim

from a challenge to its timeliness. Because we hold that rule 7(f)(2) controls this issue, we do not address Giusti's arguments based on rule 54(b).

**11.** Utah R. Civ. P. 7(f)(2).

**12.** *Id.*

additional order need be prepared. In the absence of such a directive, rule 7(f)(2) could only be satisfied if one of the parties prepared an order for entry. The burden was on SWC, as the prevailing party, to prepare the order. When SWC failed to meet its burden, Giusti acted appropriately in preparing the order,[13] and the court entered it on July 10. Because the entry of the July judgment satisfied the requirements of rule 7(f)(2), the July judgment triggered the appeal period, and Giusti's appeal, taken on August 6, was timely.

¶ 29 This result is supported by our recent decision in *Code*,[14] in which we explained the correct application of rule 7(f)(2). In *Code*, the district court issued a memorandum decision in January dismissing plaintiff's claim.[15] When defendants, the prevailing party, failed to prepare a separate order for entry as required by rule 7(f)(2), plaintiff prepared the order, and the court entered it in February.[16] Plaintiff appealed in March, and the court of appeals dismissed her case for lack of jurisdiction, holding that her appeal was untimely.[17] We reversed and held that "the [February] order, and not the [January] memorandum decision, constituted the district court's entry of judgment for appeal purposes." [18]

¶ 30 In our opinion, we emphasized the broad and mandatory nature of rule 7(f)(2): "[a] court should include [an] explicit direction *whenever it intends a document*—a memorandum decision, minute entry, or other document—*to constitute its final action.* Otherwise, rule 7(f)(2) *requires* the preparation and filing of an order to trigger finality for purposes of appeal." [19]

¶ 31 Because the issue in *Code* turned on whether a memorandum decision constituted

a final judgment, SWC argues that our holding "is limited to memorandum decisions or minute entries where finality is not discernible." SWC thus argues that our mandate in *Code* does not apply to Giusti because (1) the district court issued a final order rather than a memorandum decision, (2) the finality of that order was clearly discernable, and (3) the July judgment was unnecessary because it was "merely a compact summary of the two prior orders and did nothing more than restate what had already been resolved in the prior orders." We address each argument in turn.

¶ 32 First, our broad holding in *Code* is inclusive of *all* final district court decisions, regardless of how they are styled. We held that "whenever" a court intends any "document" to constitute its final action, the court must explicitly direct that no additional order is necessary.[20] Otherwise, rule 7(f)(2) "requires" the preparation and entry of a separate order in conformity with the court's decision.[21] Thus the requirements of rule 7(f)(2) apply to every final decision issued by a district court, not just memorandum decisions or minute entries, as SWC claims.

¶ 33 Second, our holding in *Code* removes the burden from litigants of discerning when the appeal period has been triggered. SWC argues that litigants retain this burden, and because the finality of the June order was "discernible," in that it "unequivocally ended the controversy between the parties[,]" the June order triggered the appeal period.

¶ 34 SWC is correct that a decision is final when it ends the controversy between the parties.[22] SWC is also correct that, pursuant to rule 3 of the Utah Rules of Appellate Procedure, an appeal of right may be

---

**13.** *Code*, 2007 UT 43, ¶ 7, 162 P.3d 1097 (when the prevailing party fails to prepare an order for entry according to rule 7(f)(2), "any party interested in finality—generally, the nonprevailing party—may submit an order").

**14.** *Id.*

**15.** *Id.* ¶ 1.

**16.** *Id.*

**17.** *Id.* ¶ 2.

**18.** *Id.* ¶ 4.

**19.** *Id.* ¶ 6 (emphases added).

**20.** *Id.*

**21.** *Id.*

**22.** We have defined a final judgment as one that "ends the controversy between the parties." *Salt Lake City Corp. v. Layton*, 600 P.2d 538, 539 (Utah 1979).

taken only from "final orders and judgments."[23] But rule 3 does not trump rule 7(f)(2). That is, while rule 3 provides the substantive requirement for a decision's finality—that it end the controversy between the parties—rule 3 does not eviscerate the procedural requirements of rule 7 for triggering the appeal period once a final decision is rendered.

¶ 35 The rules work in concert: pursuant to rule 3, parties may take an appeal of right only from a final decision. And pursuant to rule 7(f)(2), that decision triggers the appeal period only upon the occurrence of one of the following events: (1) the court approves an order submitted with an initial memorandum, (2) the court directs that no additional order need be entered, or (3) a party prepares an order for entry that is consistent with the court's final decision. It is the entry of the final order according to rule 7(f)(2) that triggers the appeal period. If the court fails to satisfy rule 7(f)(2)'s exceptions and if the prevailing party fails to prepare an order for entry, "the appeal rights of the nonprevailing party will extend indefinitely."[24]

¶ 36 The strict application of rule 7(f)(2) supports the judicial policy favoring finality, and it prevents the confusion that often leads—as it has here—to additional litigation when parties are left to divine when a court's decision has triggered the appeal period. In *Code*, we explained that "[w]e see no benefit to a system in which parties must guess, on a case-by-case basis, whether a judge's language in a memorandum decision 'implie[s],' 'invite[s],' or 'contemplate[s]' further action by the parties."[25] While we spoke in terms of a memorandum decision because that was the issue before us in *Code*, we take this opportunity to clarify that the rule's requirements and the policy supporting the rule apply to all final decisions, regardless of how they are styled.

¶ 37 We reject SWC's argument that the July judgment was unnecessary and therefore the appeal period was triggered by the June order. In this regard, SWC argues that the July judgment was unnecessary because it was "merely a compact summary of the [November and June] orders and did nothing more than restate what had already been resolved in the prior orders." Even if, as SWC claims, the July judgment was a duplication of the November and/or June orders, that does not change our analysis that the July judgment was nevertheless necessary to trigger the appeal period. That is, because the requirements of rule 7(f)(2) were not satisfied with the November or June order, the July judgment was the only order that satisfied rule 7(f)(2). Therefore, it triggered the appeal period.

¶ 38 Rule 7(f)(2) applies to every final decision issued by a district court. It therefore applies to the June order issued by the district court in Giusti's case. Because the district court did not direct that no additional order was necessary, SWC, as the prevailing party, had the obligation to prepare an order in conformity with the court's decision. When SWC failed to do so, Giusti acted appropriately in preparing the order, and the appeal period was triggered when that order, in the form of the July judgment, was entered on July 10. Thus, Giusti's appeal was timely.[26]

## II. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT TO SWC ON EACH OF GIUSTI'S CLAIMS

¶ 39 We now review Giusti's claim that the district court erred in granting summary judgment to SWC on Giusti's (1) contract

---

23. Utah R.App. P. 3(a).

24. *Code*, 2007 UT 43, ¶ 6 n. 1, 162 P.3d 1097.

25. *Id.* ¶ 6 (alterations in original) (citation omitted).

26. Giusti seeks attorney fees on the ground that SWC's motion to dismiss his appeal as untimely was frivolous under Utah Rule of Appellate Procedure 33(b). A frivolous claim under rule 33 "is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." While SWC's interpretation of the law is incorrect, we cannot say that its claim was groundless or made in bad faith. Accordingly, there is no basis on which to award attorney fees to Giusti.

claims, (2) fraudulent inducement claim, and (3) tortious interference claim.

### A. The District Court Did Not Err in Granting Summary Judgment to SWC on Giusti's Contract Claims

¶ 40 Giusti first argues that the district court erred in granting SWC's motion for summary judgment on Giusti's three contract claims: breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel. Each of these claims is based on Giusti's assertion that the November offer letter, operating as an employment contract, guaranteed him a minimum of twelve months of employment.[27] Because we hold that the November offer letter provided no guaranty of employment, the district court correctly granted summary judgment to SWC on each of Giusti's contract claims.

¶ 41 Giusti signed three contracts in November and December 1999. First, he signed the November offer letter accepting employment with SWC. Second, he signed the December 5 SWC employment agreement containing an explicit provision that Giusti's employment could be terminated "without cause at any time." Third, Giusti initialed the December 13 contract, which was a duplication of the November offer letter with only one change to his compensation scheme.

¶ 42 Giusti argues that the November offer letter—and, by extension, the December contract—contained a provision guarantying him twelve months of employment with SWC. SWC contends that the November offer letter merely "covered the terms of Plaintiff's compensation, including base salary, override, commissions, the amount of a draw, stock options, vacation, and benefits." It did not "provide[ ] him with 'a minimum term' of twelve months employment at SWC." Additionally, SWC argues that because Giusti signed the SWC employment agreement containing the at-will provision, he agreed to the at-will nature of his employment.

¶ 43 Because the November offer letter provided no guaranty of employment, and because Giusti was an at-will employee, SWC argues that Giusti's contract claims—all based on his assertion that he was guaranteed twelve months employment—must fail. The district court agreed, and we affirm.

¶ 44 Under basic rules of contract interpretation, courts first look to the writing alone to determine its meaning and the intent of the contracting parties.[28] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[29] Only where there is ambiguity in the terms of the contract may the parties' intent "be ascertained from extrinsic evidence."[30] "A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."[31] The question here is whether the November offer letter is ambiguous such that we may consider extrinsic evidence, including conversations between Giusti and Hyde. We conclude that it is not ambiguous. It reads as follows:

> SWC will also provide you with a *monthly subsidy payment or non-recoverable draw for a 12 month period* to allow you to build the staff in the product area and grow your personal book of business and start receiving overrides and commission. *For*

---

27. While Giusti does not clearly state the particular basis of each of his contract claims, it appears that his argument is that SWC (1) breached his employment contract by terminating his employment after only five months, (2) breached the covenant of good faith and fair dealing that was implied in the agreement by terminating his employment early, and (3) should be estopped from denying its promise of employment given Giusti's reliance on that promise.

28. *See Deep Creek Ranch, LLC v. Utah State Armory Bd.*, 2008 UT 3, ¶ 15, 178 P.3d 886.

29. *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134 (citations and internal quotation marks omitted).

30. *Deep Creek Ranch*, 2008 UT 3, ¶ 16, 178 P.3d 886.

31. *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (citations and internal quotation marks omitted).

the first 12 months of employment SWC will provide you with a payment of $7,500 per month. Your commission and overrides during that ramp up period will be applied to the subsidy payment. At anytime during the 12 month period you can make a one time election to move from the subsidy plan to the commission and override plan if you desire. (Emphases added.)

¶ 45 This language plainly does not guarantee Giusti's employment. There is no statement implying that his employment cannot be terminated or that it is guaranteed for any period. The language indicates only the level of compensation and benefits Giusti is to receive during the first twelve months of his employment, should it last that long. The contract does not guarantee that his employment *will* last that long. Because there is no ambiguity in the language of the contract, we need not, and must not, consider extrinsic evidence to determine its meaning.

¶ 46 Additionally, in Utah, we presume that employment contracts are at-will.[32] When an employer intends to alter the at-will arrangement and guarantee employment for a specified period, we require the employer to make that promise clear and definite: "There must be a manifestation of the employer's intent [to guarantee employment] that is communicated to the employee and sufficiently definite to operate as a contract provision."[33] Otherwise, as the court of appeals has held, "an employer could never tell a potential employee in a job interview what was expected of him or her over the next few months or years without creating [a guaranty of employment] contract."[34] Here, the language in the November offer letter does not guarantee Giusti employment for twelve months. And we will not infer such a promise where it clearly does not exist.

¶ 47 Additionally, a month after signing the November offer letter, Giusti signed the SWC employment agreement that contained an at-will employment provision. Section 6.2 of the agreement provides as follows:

*6.2 Termination With or Without Cause*

Employer may terminate Employee's employment with Employer without cause at any time upon two (2) weeks advance written notice to Employee.

¶ 48 According to Giusti, he reviewed this provision with Pat Black, the Human Resources Director, and told her that the provision did not apply to him. When Black responded that she had no knowledge of any other arrangement Giusti may have had with Hyde, Giusti signed the document. He did not strike out any provision of the agreement or ask to sign it later so that he could speak with Hyde prior to signing it. Given that Giusti is a sophisticated executive who was savvy enough to recognize and question the at-will provision, he clearly could have noted his concerns on the document or refused to sign it until he could clarify his concerns. He did neither. And because the terms of the SWC employment agreement are clear, the conversation he claims he had with Black is inadmissible parol evidence.[35] The SWC employment agreement clearly provides, as does the November offer letter, that Giusti's employment was at-will.

¶ 49 Giusti next argues that the November offer letter supersedes the SWC employment agreement and, therefore, his employment was not at-will. As with his other claims, this claim is based on Giusti's assertion that the November offer letter contained a guaranty of employment. Because the November offer letter contained no such guaranty, this argument fails.

¶ 50 Finally, Giusti argues that the district court erred in dismissing his contract claims

32. *Uintah Basin Med. Ctr. v. Hardy*, 2002 UT 92, ¶ 21, 54 P.3d 1165; *see also Evans v. GTE Health Sys. Inc.*, 857 P.2d 974, 975 (Utah Ct.App.1993).

33. *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991).

34. *Evans*, 857 P.2d at 978.

35. Giusti also argues that Black fraudulently induced him to sign the SWC employment agreement by telling him that his signature was a prerequisite to her processing his benefit enrollment. Giusti presented no evidence that her statement was fraudulent. We therefore decline to address his argument on this point.

that are unrelated to the termination of his employment. He fails, however, to adequately brief those claims.[36] His entire argument consists of two sentences and a footnote containing a six-item laundry list of Giusti's allegations against SWC and Hyde. We therefore decline to address this argument.

¶ 51 For all the foregoing reasons, the district court did not err in granting summary judgment to SWC on Giusti's contract claims.

## B. The District Court Did Not Err in Granting Summary Judgment to SWC on Giusti's Fraudulent Inducement Claim

¶ 52 Giusti next argues that the district court erred in granting summary judgment to SWC on his claim that SWC "fraudulently induc[ed] him to leave his secure executive employment at Cambric and accept employment and employment contracts at SWC." The district court granted summary judgment to SWC on this claim because it found that Giusti made "no showing of damages, a crucial element of [the] claim." The court was correct.

¶ 53 As the party moving for summary judgment, SWC had the burden of demonstrating that there was no genuine issue of material fact.[37] SWC asserted that Giusti had not demonstrated that he suffered damages—an essential element of his fraudulent inducement claim—and, therefore, there was no issue of material fact on the question of damages.[38] When, as here, the moving party "challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to present evidence that is sufficient to establish a genuine issue of material fact."[39] The district court found that Giusti failed to satisfy this burden. Specifically, the court found that Giusti failed to raise a genuine issue of material fact regarding his damages, and the court granted summary judgment to SWC. We affirm.

¶ 54 Giusti asserts that the district court erred in measuring his damages by comparing his Cambric compensation with his post-Cambric compensation. Giusti claims that in measuring his damages, the court should have considered the value of the SWC employment agreement and awarded him its full value. As we have held, however, the SWC employment agreement was not breached. Therefore, Giusti is not entitled to the benefit of that bargained-for agreement.

¶ 55 Rather, Giusti is limited to those damages necessary to compensate him for having been, as he claims, fraudulently induced to leave Cambric. Accordingly, the court measured Giusti's damages by comparing what he earned at Cambric, in base salary and commissions, with what he earned at SWC, and later, at Callware.[40] Under this measure, if Giusti suffered a loss in compensation after leaving Cambric, he suffered damages. Because Giusti failed to raise a genuine issue of material fact as to whether he incurred such damages, the court correctly granted SWC's motion for summary judgment.

¶ 56 The approach employed by the district court has been adopted by other jurisdic-

---

36. Utah Rule of Appellate Procedure 24(a)(8)-(9) requires adequate briefing of the arguments, including, "the contentions and reasons of the appellant with respect to the issues presented, ... with citations to the authorities, statutes, and parts of the record relied on."

37. Utah R. Civ. P. 56(c).

38. The elements of a fraud claim include the following:
(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) *to his injury and damage.*
*Dugan v. Jones,* 615 P.2d 1239, 1246 (Utah 1980) (emphasis added).

39. *Eagar v. Burrows,* 2008 UT 42, ¶ 15, 191 P.3d 9 (internal citations and quotation marks omitted).

40. Giusti accepted employment at Callware shortly after his employment was terminated at SWC.

tions.[41] In Pennsylvania, for example, the Superior Court concluded that the plaintiff-employee was entitled to distinct damages for his fraudulent inducement claim. The court noted that "[d]amages for fraud are limited to what losses were immediately and proximately caused by the fraud" and held that it was the "loss of [the employee's] salary and benefits from [his prior employer that] was the injury caused by appellant's fraudulent misrepresentation." [42]

¶ 57 We agree with this approach and clarify that in the employment context, damages for fraudulent inducement consist of the losses that are "immediately and proximately caused" by the fraud. That is, the employee is entitled to recover the difference between the compensation provided by the employer whom the employee was induced to leave and the compensation that follows. The district court was correct in applying this measure to Giusti's claim.

¶ 58 Giusti also argues that, even if the court applied the correct measure of damages, it erred in calculating those damages. The district court found that Giusti's employment at Cambric provided him the following: $125,000 annual salary, an $800 per month car allowance, and a future periodic bonus based on the company's economic performance and Giusti's performance. The court then compared that compensation with Giusti's compensation at SWC, which provided Giusti the following: $180,000 annual salary plus bonuses and other benefits. Finally, the court reviewed Giusti's compensation from Callware and found that it constitutes the following: $125,000 annual salary plus commissions and bonuses.

¶ 59 In comparing these figures, the court reviewed the annual salaries and commission and bonus structures at Cambric, SWC, and Callware. The court concluded that Giusti earned the same annual salary at Callware as

he did at Cambric ($125,000), and that he earned more at SWC ($180,000) than at Cambric. Thus, he suffered no damages in his annual salary as a result of leaving Cambric. Giusti disputes this finding, claiming that his base salary at Cambric was due to increase to $135,000 in January 2000. Thus, according to Giusti, the court made a $10,000 error in its calculations.

¶ 60 But even if the district court had determined that Giusti's annual salary was $135,000 at Cambric, that determination would not have changed the court's conclusion that Giusti suffered no damages. That is, Giusti's annual salary at SWC was also a factor, and it far exceeded $135,000—it was $180,000. Based on these figures, Giusti earned $45,000 more at SWC than at Cambric. Therefore, even if Giusti earned $10,000 less at Callware than at Cambric ($125,000 versus $135,000 respectively), his total annual salary following his employment at Cambric still exceeded that of what he earned at Cambric, and any claimed error in the court's calculation of his annual salary was harmless.[43]

¶ 61 Based on its comparison of Giusti's bonus and commission structure at Cambric and Callware, the court rejected his claim that his bonuses at Cambric far exceeded those at Callware. Giusti claimed that he would have received $75,000 in bonuses at Cambric. The court found that such a claim was "speculative at best and cannot be proven with requisite 'reasonable certainty' because [Giusti's future bonuses] are tied to [Cambric's] future economic performance as well as [Giusti's] future performance." As to his commissions at Callware, Giusti testified only that he received commissions, but that he could not remember how much.

¶ 62 Because Giusti claimed future bonuses at Cambric but failed to provide current commission figures from Callware,

**41.** *See, e.g., Helmer v. Bingham Toyota Isuzu,* 129 Cal.App.4th 1121, 29 Cal.Rptr.3d 136, 143–44 (Ct.App.2005); *Prokopeas v. Rapp Collins World Wide, Inc.,* No 3:03–CV–1994–D, 2004 WL 2296827, at *1, 2004 U.S. Dist. LEXIS 20507, at *2 (N.D.Tex. Oct. 13, 2004).

**42.** *Lokay v. Lehigh Valley Coop. Farmers, Inc.,* 342 Pa.Super. 89, 492 A.2d 405, 410, 411 (1985).

**43.** *State v. Evans,* 2001 UT 22, ¶ 20, 20 P.3d 888. ("[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings.").

the court could not accurately compare the numbers to determine whether Giusti suffered any damages by leaving Cambric. And it correctly held that "[s]ummary judgment is warranted if a plaintiff fails 'to supply evidence, which, if accepted as true, would clearly and convincingly support each element of a fraud claim.' "[44]

¶ 63 The district court was correct in (1) distinguishing between breach of contract and fraudulent inducement damages, (2) measuring damages by comparing Giusti's Cambric compensation with his post-Cambric compensation, and (3) granting summary judgment because Giusti failed to raise a genuine issue of material fact regarding his damages. Therefore, the district court did not err in granting summary judgment to SWC on Giusti's fraudulent inducement claim.

*C. The District Court Did Not Err in Granting Summary Judgment to SWC on Giusti's Tortious Interference Claim*

¶ 64 Giusti next argues that the district court erred in granting summary judgment to SWC on Giusti's tortious interference claim. Giusti claims that "Hyde and Erickson maliciously and intentionally interfered with [Giusti's] existing and prospective economic relations with SWC [by terminating his employment] for the wholly personal reason of saving their own jobs and not for any legitimate business purpose of their employer." The district court correctly rejected this claim.

▉▉▉ ¶ 65 To recover damages for tortious interference, "a plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."[45] When the defendants are also employees, however, the plaintiff must establish that the defendants were acting outside the scope of their employment *for purely personal reasons*.[46] Employees act for purely personal motives when their actions are *in no way connected with the employer's interests*.[47]

¶ 66 The two sides submitted conflicting evidence as to the reason for Giusti's termination. SWC cited numerous performance-based reasons,[48] while Giusti cited non-performance based reasons. Specifically, Giusti claims that because SWC failed to meet its revenue targets for the year, Hyde engaged in a "malicious plan to divert attention from his own failures to meet SWC's revenue targets by blaming Giusti." Based on these claims, Giusti argues that there was a genuine issue of fact regarding the motive of Hyde, and therefore, summary judgment was inappropriate.

¶ 67 The district court correctly noted, however, that "when an employee's activity is so clearly within the scope of employment that reasonable minds cannot differ, the court may decide the issue as a matter of law."[49]

▉▉ ¶ 68 Here, the court correctly found that, as high level executives with the responsibility for the operation of SWC, "the right to terminate is an activity clearly within the scope of employment of Erickson and Hyde."[50] The court also noted that even if

**44.** The district court quoted *Republic Group v. Won–Door Corp.*, 883 P.2d 285, 292 (Utah Ct. App.1994).

**45.** *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982) (citation omitted).

**46.** *See Lichtie v. U.S. Home Corp.*, 655 F.Supp. 1026, 1028 (D.Utah 1987).

**47.** *See Birkner v. Salt Lake County*, 771 P.2d 1053, 1057 (Utah 1989).

**48.** At his deposition, Hyde claimed that Giusti's employment was terminated because Giusti (1) failed to actively drive revenue and close deals for SWC, (2) was not sufficiently familiar with SWC's products, (3) created disharmony among the salesforce who worked for him, and (4) was not effective in promoting SWC products, training the sales organization, dealing with customers, helping close deals, or interacting with team members.

**49.** *See Christensen v. Swenson*, 874 P.2d 125, 127 (Utah 1994).

**50.** The court of appeals has explained that duties within the scope of employment include those that are "generally directed toward the accomplishment of objectives within the scope of the employee's duties and authority, or reasonably incidental thereto." *Nunez v. Albo, M.D.*, 2002 UT App 247, ¶ 12, 53 P.3d 2.

Hyde had mixed motives for terminating Giusti's employment, that does not prevent a grant of summary judgment.[51]

¶ 69 The district court was correct on all points. Giusti presented no evidence that Hyde and/or Erickson acted beyond the scope of employment and terminated Giusti's employment for purely personal reasons that were in no way connected with their employer's interests. Thus, Giusti failed to raise a genuine issue of material fact regarding Hyde's and Erickson's motives, and the court correctly granted summary judgment to SWC on Giusti's tortious interference claim.

## III. THE DISTRICT COURT DID NOT ERR IN DENYING SWC'S REQUEST FOR ATTORNEY FEES OR IN LIMITING ITS RECOVERY OF COSTS

¶ 70 We now address SWC's cross-appeal, in which it claims that the district court erred in denying it attorney fees and in limiting its award of costs to $55. We hold that the district court did not err in either regard. We address each argument below.

### A. The District Court Did Not Err in Denying SWC Attorney Fees

¶ 71 SWC first argues that the district court erred in denying it attorney fees. In its order, the court noted that "attorney fees in Utah are awarded only as a matter of right under a contract or statute."[52] The court then reviewed section 7.3 of the SWC employment agreement and found that it did not provide for an award of fees to SWC under the facts of this case. The court was correct.

¶ 72 Section 7.3 provides in relevant part the following:

In the event *either party defaults* in any of the terms or provisions of this Agreement the non-defaulting party shall be entitled to recover its, his or her reasonable attorney's fees and costs incurred, whether or

not suit is commenced or final judgment obtained. (Emphasis added.)

¶ 73 "Fees provided for by contract . . . are allowed only in strict accordance with the terms of the contract."[53] The terms of section 7.3 require that there be a defaulting party in order for an award of fees to be triggered. The district court correctly noted—and SWC has never claimed otherwise—that "[Giusti] is not a defaulting party." The court then ruled that section 7.3 was never triggered, and therefore, could not serve as the basis for an award of fees to SWC.

¶ 74 On appeal, SWC contends that while the precise terms of section 7.3 were unmet, SWC is nevertheless entitled to an award of fees. SWC cites Utah Code section 78B–5–826 and our holding in *Bilanzich v. Lonetti*,[54] wherein we interpreted and applied section 78B–5–826.

¶ 75 Section 78B–5–826 provides the following:

A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.[55]

¶ 76 SWC argues that in *Bilanzich,* we interpreted this section broadly to mean that whenever litigation is based on a writing that contains a provision allowing at least one party to recover attorney fees, the precise terms of the provision are irrelevant, and district courts should liberally award fees to prevailing parties. *Bilanzich,* however, is inapplicable.

¶ 77 In *Bilanzich,* we held that when a contract creates "an unequal exposure to the risk of contractual liability for attorney

51. *See Lichtie,* 655 F.Supp. at 1027 ("[I]f an agent acts with mixed motives his or her conduct will be within the scope of employment[,]" and summary judgment is appropriate.).

52. The district court quoted *Foote v. Clark,* 962 P.2d 52, 54 (Utah 1998).

53. *Foote,* 962 P.2d at 54.

54. 2007 UT 26, 160 P.3d 1041.

55. Utah Code Ann. § 78B–5–826 (2008).

fees," [56] district courts may apply section 78B-5-826 to ensure that both parties are subject to the attorney fee provision.[57] Here, section 7.3 of the SWC employment agreement provided attorney fees to the "non-defaulting party." Thus, as to attorney fees, neither party had a contractual advantage or assumed more contractual liability than the other; SWC and Giusti were subject to the provision equally. Accordingly, *Bilanzich* does not apply. SWC is entitled to fees only under the terms of section 7.3. That section requires a defaulting party. In this case, there was none, and the district court correctly denied SWC's claim for fees.

## B. The District Court Did Not Err in Limiting SWC's Recovery of Costs

¶ 78 SWC next argues that the district court erred in limiting its recovery of costs. The district court ruled that rule 54(d) did not provide for costs except for $55 in witness costs.[58] We review the district court's denial of costs for abuse of discretion, granting a high degree of deference to the court's decision. We hold that the court did not abuse its discretion in limiting SWC's award of costs.[59]

¶ 79 Rule 54(d) of the Utah Rules of Civil Procedure provides in pertinent part that

> costs shall be allowed as of course to the prevailing party unless the court otherwise directs; provided, however, where an appeal or other proceeding for review is taken, costs of the action, other than costs in connection with such appeal or other proceeding for review, shall abide the final determination of the cause.

¶ 80 "Costs" as used in rule 54 refers to fees that are paid to the court, fees that are paid to witnesses, costs that are authorized by statute, and costs incurred in taking depositions, subject to the limitation that they were taken in good faith and appear to be essential for the development and presentation of the case.[60]

¶ 81 SWC's Verified Memorandum of Costs, which it timely submitted pursuant to rule 54(d),[61] requested total costs of $13,329.56. Of that amount, $2,039.60 was for photocopy costs, Westlaw charges, and witness fees. The remaining amount—$11,289.96—was for deposition costs for ten individuals, including Giusti, whose deposition was taken over the course of seven sessions.

¶ 82 The court limited SWC's award to $55 in witness costs and found that SWC's request for "copying costs and overnight delivery charges is not within the definition of costs." Turning to the deposition costs, the court found that, while SWC's depositions were taken in good faith, the case was decided on legal rather than factual grounds, and therefore, SWC failed to establish that the extensive deposition of Giusti was "essential for the development of the case[,] and since there is no method to parse out what portion may have been essential from the overall claim, the claim is denied."

¶ 83 SWC argues that due to the factually intensive nature of Giusti's claims, all the depositions SWC conducted were essential to defending against each claim, and the depositions allowed SWC to "successfully move for dismissal of every one of [Giusti's] claims except one that [he] voluntarily dismissed." Additionally, SWC points out that the court did not explain why it denied costs regarding the other nine depositions. Thus, it claims, the district court erred.

¶ 84 In reviewing a district court's denial or award of costs, we apply a highly deferential standard. We also recognize that rule 54(d) is discretionary: "costs shall be allowed

---

**56.** 2007 UT 26, ¶ 19, 160 P.3d 1041.

**57.** "[T]he language of the statute is not mandatory but allows courts to exercise discretion in awarding attorney fees and costs." *Id.* ¶ 17.

**58.** SWC also argues that it is entitled to costs under section 7.3 of the SWC employment agreement. Because we conclude that there was no defaulting party, section 7.3 was never triggered, and we do not address this argument.

**59.** *See, e.g., Pennington v. Allstate Ins. Co.,* 973 P.2d 932 (Utah 1998).

**60.** *Frampton v. Wilson,* 605 P.2d 771, 773 (Utah 1980).

**61.** *See* Utah R. Civ. P. 54(d)(2).

as of course to the prevailing party *unless the court otherwise directs.*[62] And there are two requirements for awarding deposition costs: the trial court must be persuaded that (1) the depositions were taken in good faith, and (2) they must appear to be essential to the development of the case.[63]

¶ 85 Given these considerations, the district court did not abuse its discretion in limiting SWC's award of costs. The district court specifically addressed the two requirements for awarding deposition costs and found that, while the depositions were taken in good faith, the court was unpersuaded that the "extensive length of [Giusti's] deposition" was necessary.

¶ 86 SWC argues that Giusti's extensive deposition was necessary because of the factually intensive nature of his claims and because he was prone to giving long, speech-like answers. But such an argument is insufficient to demonstrate that the court abused its discretion. The court applied the correct standard, gave a legitimate reason for its decision, and therefore, did not abuse its discretion. We therefore affirm the court's decision to limit SWC's award of costs to $55.

## CONCLUSION

¶ 87 First, rule 7(f)(2) and our decision in *Code* demonstrate that the July judgment was necessary, and therefore, Giusti's appeal was timely. Second, the district court did not err in granting summary judgment to SWC on each of Giusti's claims: (1) his contract claims fail because the November offer letter did not guarantee Giusti's employment; (2) his fraudulent inducement claim fails because Giusti failed to raise a genuine issue of material fact regarding his damages; and (3) his tortious interference claim fails because Giusti failed to raise a genuine issue of material fact regarding Hyde's and Erickson's motives in terminating his employment.

¶ 88 Finally, the district court did not err in denying SWC attorney fees because the SWC employment agreement does not provide for them on the facts of this case. The district court also did not abuse its discretion

in limiting SWC's award of costs. We therefore affirm each of the district court's decisions.

¶ 89 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT'S opinion.

---

**62.** Utah R. Civ. P. 54(d)(1) (emphasis added).

**63.** *Frampton*, 605 P.2d at 774.