**2013 UT App 94**

# THE UTAH COURT OF APPEALS

RAYMOND K. NOLIN, CATHERINE R. NOLIN,
GORDON RUSHFORTH, AND EVELYN RUSHFORTH,

*Plaintiffs and Appellees,*

*v.*

S&S CONSTRUCTION, INC.,

*Defendant and Appellant.*

Opinion
No. 20110663-CA
Filed April 18, 2013

Fifth District, St. George Department
The Honorable James L. Shumate
No. 060501825

Dennis R. James, Stephen F. Edwards, and Jeremy S. Stuart,
Attorneys for Appellant

D. Williams Ronnow, Attorney for Appellees

JUDGE CAROLYN B. MCHUGH authored this Opinion, in which
JUDGES WILLIAM A. THORNE JR. and J. FREDERIC VOROS JR.
concurred.

McHUGH, Judge:

¶1    S&S Construction, Inc. (S&S) appeals the district court's
entry of judgment for attorney fees and costs. We reverse.

BACKGROUND

¶2      On August 29, 2002, Raymond and Catherine Nolin entered into a Real Estate Purchase Contract (REPC) with S&S for construction of a new home to be built on lot 244 of the Paradise Canyon subdivision in St. George, Utah. Likewise, on August 26, 2003, Gordon and Evelyn Rushforth entered into a REPC with S&S for construction of a new home to be built on lot 243 in the same subdivision.

¶3      Sometime in 2002, S&S constructed a rock retaining wall (the Retaining Wall) in a "Limited Common Area"[1] between lots 243 and 244. On January 10, 2005, the Retaining Wall collapsed after a prolonged rain storm, which caused dirt and rocks to slough onto the Nolins' lot. Shortly thereafter, the Retaining Wall was restacked in nearly identical fashion to the manner in which it was initially constructed. In response, the Nolins and the Rushforths (collectively, the Homeowners) filed a complaint against S&S and others alleging defective construction of the Retaining Wall.

---

1. The Declaration of Covenants Conditions and Restrictions of Paradise Canyon defines a "Limited Common Area" as follows:

> [T]hat portion of Property owned by the [Paradise Canyon Owners Association] shown on the Plat as Limited Common Area. The Owner of the Lot to which such Limited Common Area is adjacent and/or appurtenant has the use and enjoyment of that Limited Common Area to the exclusion of other Owners. Limited Common Area is subject to rights of the [Paradise Canyon Owners Association] set forth in this Declaration.

Those limitations impose a duty on the Nolins and the Rushforths to maintain the Limited Common Area, and if they fail to do so, "[t]he cost of such maintenance shall be assessed against" them.

¶4    After several years of litigation, the parties entered into a settlement agreement under which the Homeowners dismissed their complaint in return for S&S's $20,000 contribution to the estimated $60,000 cost of removing and replacing the Retaining Wall. Because the parties could not reach an agreement on whether the Homeowners were entitled to recover their attorney fees under the REPC, they reserved that issue for resolution by the district court. The settlement agreement provides,

> The Parties agree the issue of attorney[] fees and costs against S&S shall be reserved and submitted to the [c]ourt by motion pursuant to Utah Rules of Civil Procedure [rule] 7 and other governing Utah law and that for the purposes of the motion for attorney[] fees and costs, the [Homeowners] shall be considered prevailing parties.

¶5    As anticipated, the Homeowners filed a motion for attorney fees and costs in the district court, which S&S opposed. In support of their motion, the Homeowners introduced an affidavit containing facts and expert opinion. At the hearing on the motion, S&S sought permission to conduct discovery and to cross-examine the Homeowners' expert if the district court was inclined to consider this evidence in deciding the motion for attorney fees. The district court denied that request, stating,

> I really don't think that's necessary, [c]ounsel. There does not appear to be a substantial factual issue over the issue of attorney[] fees as it applies here. I think . . . courts look within the four corners of the documents. It's interesting that we do have the affidavit there to put a general factual umbrella over it. But I think the legal decision is made as the parties in the settlement outlined it within the documents that we have here. So I wouldn't think that it's necessary to go any f[u]rther than that.

Ultimately, the district court granted the Homeowners' motion for attorney fees.

¶6      The Homeowners then filed a series of affidavits seeking an award of $141,575, which was accompanied by billing statements reflecting the costs and fees submitted by their trial counsel. S&S objected to the request as unreasonable and unsupported. On July 17, 2011, the district court signed an order awarding $141,575 in attorney fees and costs to the Homeowners. S&S filed a timely appeal.

ISSUES AND STANDARDS OF REVIEW

¶7      S&S argues that the district court erred in granting the Homeowners' motion for attorney fees and costs because it incorrectly interpreted the REPCs and based its decision, in part, on extrinsic facts and expert opinions outside of the four corners of those agreements. "Whether attorney fees are recoverable is a question of law, which we review for correctness." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 16, 40 P.3d 1119.

¶8      S&S also challenges the amount of the attorney fees and costs awarded. The "'[c]alculation of reasonable attorney fees is in the sound discretion of the district court, and will not be overturned in the absence of a showing of a clear abuse of discretion.'" *Moore v. Smith*, 2007 UT App 101, ¶ 53, 158 P.3d 562 (quoting *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988)).

ANALYSIS

¶9      S&S contends that the district court erred because the Homeowners are not entitled to recover their attorney fees. "As a general rule, attorney fees are recoverable only if authorized by contract or statute." *Anderson & Karrenberg v. Warnick*, 2012 UT App 275, ¶ 9, 289 P.3d 600. "If the legal right to attorney fees is

established by contract, Utah law clearly requires the court to apply the contractual attorney fee provision and to do so strictly in accordance with the contract's terms." *Jones v. Riche*, 2009 UT App 196, ¶ 2, 216 P.3d 357 (mem.).

¶10    In relevant part, the REPCs state, "17. Attorney Fees and Costs. In the event of litigation or binding arbitration *to enforce this* [*REPC*], the prevailing party shall be entitled to costs and reasonable attorney fees." (Emphasis added.) Because the parties agreed that the Homeowners were to be considered the prevailing parties, the issue before us is whether the litigation was "to enforce" the REPCs. In concluding that it was, the district court relied on section 10.2 of the REPCs, which states, in relevant part,

> 10.2 Condition of Property. . . . [S&S] . . . warrant[s] the heating, cooling, electrical, plumbing and sprinkler systems (including all gas and electric appliances), fixtures, and *structural elements of the Residence* (including the roof, walls, and foundation) against defects in material and workmanship for a period of one year after the Settlement Deadline.

(Emphasis added.)

¶11    According to the district court, S&S "breached the warranties of construction in a workmanlike manner and habitability in the defective construction of the Retaining Wall and therefore breached the Parties' [REPCs]." In reaching that conclusion, the district court relied on

> photographic evidence show[ing] that the Retaining Wall is over eight-feet high and not only retains fill between lots 243 and 244, but serves as a critical component of the [Homeowners'] improved lots providing retention and support of the fill soil on which [the Rushforths'] home is built, and is therefore critical to the structural stability and

function of the Rushforth lot and residence and the safety and enjoyment for the Nolins of their yard and lot.

The district court concluded that, "[a]s such, it was clearly within the intent and purview of the Parties' [REPCs] to include the Retaining Wall as a structural element of the residences as provided under Section 10.2 of the Parties' [REPCs]." S&S contends that the district court ignored the plain language of the warranty provision and inappropriately relied on the photographs provided by the Homeowners.

¶12    "Under basic rules of contract interpretation, [we] first look to the writing alone to determine its meaning and the intent of the contracting parties." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 44, 201 P.3d 966, *holding modified by Central Utah Water Conservancy Dist. v. King*, 2013 UT 13. "'If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law.'" *Id.* (quoting *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134). "Only where there is ambiguity in the terms of the contract may the parties' intent 'be ascertained from extrinsic evidence.'" *Id.* (quoting *Deep Creek Ranch, LLC v. Utah State Armory Bd.*, 2008 UT 3, ¶ 16, 178 P.3d 886).

¶13    "When determining whether the plain language is ambiguous, we attempt to harmonize all of the contract's provisions and all of its terms." *KeyBank Nat'l Ass'n v. Systems W. Computer Res., Inc.*, 2011 UT App 441, ¶ 19, 265 P.3d 107 (citations and internal quotation marks omitted). "[T]o harmonize the provisions of a contract, we examine the entire contract and all of its parts in relation to each other and give a reasonable construction of the contract as a whole to determine the parties' intent." *Id.* (alteration in original) (citation and internal quotation marks omitted). Also, "[w]hen interpreting the plain language, we look for a reading that harmonizes the provisions and avoids rendering

any provision meaningless." *Id.* (alteration in original) (citation and internal quotation marks omitted). "A term or provision of the contract is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Hillcrest Inv. Co. v. Utah Dep't of Transp.*, 2012 UT App 256, ¶ 14, 287 P.3d 427 (citation and internal quotation marks omitted). While we will consider "any credible evidence" in determining whether a contract is ambiguous, *see Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995), a conclusion that a contract is ambiguous requires that both competing interpretations be "'reasonably supported by the language of the contract,'" *see Daines v. Vincent*, 2008 UT 51, ¶ 31, 190 P.3d 1269 (quoting *Ward*, 907 P.2d at 268).

¶14    S&S argues that the plain language of the REPCs is unambiguous and does not provide any warranties for the Retaining Wall installed in the Limited Common Area of the Paradise Canyon subdivision. The Homeowners respond that S&S's argument "defies logic and would exclude from any concept of structural element, and any implied warranty, footings, drive-ways, slab floors, concrete patios, and would even exclude footings under vertical posts supporting second story decks and the decks themselves" and, therefore, "illustrates the need to broadly construe application of . . . implied warranties" into the REPCs. Relying on the evidence they presented to the district court, the Homeowners argue that the Retaining Wall is a fundamental, structural element of their lots and residences that falls within the implied warranties provided for in the REPCs.

¶15    There is no dispute that the Retaining Wall was built in the Limited Common Area between the Homeowners' lots. Thus, even if the Retaining Wall were considered to be a "structural element," the plain language of the REPCs clearly limits the warranty to structural elements "of the Residence." Furthermore, the examples of structural elements of the residence provided by section 10.2 are "roof, walls, and foundation." Each of these examples are elements of the residence itself and are critical to its structural integrity,

stability, and soundness. *Cf.* Utah Code Ann. § 58-3a-304(1)(e) (LexisNexis 2012) (defining "structural elements of a building" under the Architects Licensing Act to include "foundations, beams, columns, and structural slabs, joists, bearing walls, and trusses").

¶16    Our review of the contracts as a whole convinces us that the REPCs differentiate between the terms "Lot" and "Residence," and use each advisedly. Section 1.1 of the REPCs indicates that "[t]he Purchase Price for the Residence . . . includes . . . the Lot." Section 11.1 of the REPCs states, in pertinent part, "[The Homeowners] agree[] that during the period of construction [S&S] shall have the unrestricted right to access the Lot for the purpose of construction of the Residence and any necessary subdivision improvements." Generally, a "residence" is defined as "[a] house or other fixed abode; a dwelling." *Black's Law Dictionary* 1423 (9th ed. 2009). Likewise, a "lot" is generally defined as "[a] tract of land, esp[ecially] one having specific boundaries or being used for a given purpose." *Black's Law Dictionary* 1032 (9th ed. 2009). The REPCs' precise use of the terms "residence" and "lot" convince us that if the warranty was intended to cover structural elements of the lots, as well as of the residences, it would have said so. Accordingly, the express warranty in the REPCs does not cover the Retaining Wall. *See Daines*, 2008 UT 51, ¶ 30 n.5 (holding that Utah courts will not find "ambiguity based on usage of a term that is not reasonable or is the product of 'forced or strained construction'" (quoting *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 17, 133 P.3d 428)).

¶17    Nevertheless, the Homeowners argue that a warranty covering the Retaining Wall should be implied. In support, they cite the Utah Supreme Court's decision in *Davencourt at Pilgrims Landing Homeowners Association v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234. There, the supreme court held for the first time that "[u]nder Utah law, in every contract for the sale of a new *residence*, a vendor in the business of building or selling such *residences* makes an implied warranty to the vendee that the *residence* is constructed in a workmanlike manner and fit for habitation." *Id.* ¶ 55 (emphases added). However, the court limited

the scope of the implied warranty to situations where the plaintiff can show

> (1) the purchase of a new residence from a defendant builder-vendor/developer-vendor; (2) the residence contained a latent defect; (3) the defect manifested itself after purchase; (4) the defect was caused by improper design, material, or workmanship; and (5) the defect created a question of safety or made the house unfit for human habitation.

*Id.* ¶ 60. As discussed, the Homeowners have not alleged that *their residences* contain a latent defect. Furthermore, they do not contend that their homes were rendered uninhabitable or unsafe as a result of the collapse of the Retaining Wall on the common area. Accordingly, the requirements of *Davencourt* cannot be met.

¶18     Under these circumstances, the litigation was not based on an implied warranty of workmanlike manner and habitability. Consequently, the litigation was not undertaken "to enforce" the REPCs and the Homeowners were not entitled to recover their attorney fees and costs.[2]

CONCLUSION

¶19     As a matter of law, the REPCs contain neither an express nor an implied warranty covering the Retaining Wall. Therefore, the litigation was not brought to enforce the REPCs and the Homeowners were not entitled to attorney fees under the terms of those contracts.

---

2. Because we determine that the Homeowners were not entitled to attorney fees as a matter of law, we need not reach S&S's other arguments challenging the amount awarded or the district court's reliance on the Homeowners' affidavit.

¶20    Reversed.

————