**2018 UT App 209**

# THE UTAH COURT OF APPEALS

SARA SKOLNICK,
Appellee,
*v.*
EXODUS HEALTHCARE NETWORK, PLLC,
Appellant.

Opinion
No. 20170291-CA
Filed November 8, 2018

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 150900747

Gary L. Johnson, Zachary E. Peterson, and Cortney
Kochevar, Attorneys for Appellant

Gary R. Guelker, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1     Sara Skolnick, a physician, entered into a written employment agreement (the Employment Agreement) with Exodus Healthcare Network, PLLC (Exodus), a medical services company. Pursuant to that agreement, Skolnick agreed to work in two of Exodus's medical clinics, and Exodus agreed to pay Skolnick for her services. Near the end of Skolnick's first year of employment, Exodus stopped paying Skolnick, and Skolnick sued for breach of contract. The district court entered summary judgment in Skolnick's favor, and also ordered Exodus to pay Skolnick's attorney fees. Exodus now appeals, and we affirm the district court's entry of summary judgment on Skolnick's claim for breach of contract. We also affirm the district court's

conclusion that Skolnick is entitled to recover attorney fees. But we reverse the district court's decision to award Skolnick the entire amount of fees she requested, and remand the case for entry of judgment in a lower amount, as well as for quantification of the attorney fees Skolnick incurred on the successful portion of her defense of Exodus's appeal.

BACKGROUND

¶2 Exodus owns and operates health care clinics in Salt Lake County, Utah, and employs physicians to provide a wide array of medical services. In November 2013, Exodus entered into the Employment Agreement with Skolnick, a licensed obstetrician and gynecologist. That agreement called for a three-year initial term of employment, starting on February 1, 2014, with a renewal provision that could potentially extend Skolnick's term of employment beyond three years. Under the agreement, Exodus was to pay Skolnick a "[m]onthly [b]ase [c]ompensation" payable in biweekly installments.

¶3 At about the same time, Skolnick also entered into a separate agreement (the Recruitment Agreement) with Jordan Valley Medical Center (Hospital), a local hospital. The Recruitment Agreement was intended to work in tandem with the Employment Agreement, and each incorporated the other.[1]

---

1. Skolnick, Hospital, and Exodus entered into this tripartite arrangement in an effort to comply with the provisions of the Stark Law, 42 U.S.C. § 1395nn (2012), a federal law which limits the ability of physicians to refer Medicare or Medicaid patients to hospitals with which they have financial relationships, but contains an exception for physician recruitment. *See, e.g.*, *United States ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 661–62, 669 (W.D. Pa. 2014); *see generally* 61 Am. Jur. *Proof of Facts* 3d 245 (2018). In this case, we are not asked to determine whether this arrangement is in fact in compliance with the Stark Law.

Under the Recruitment Agreement, Skolnick promised to maintain a medical practice within Hospital's service area for three years, and in exchange Hospital agreed to "loan" Skolnick "certain benefits," including a "[g]uaranteed [m]onthly [a]mount." In the Recruiting Agreement, Skolnick acknowledged that "a portion of the benefits will be paid directly or indirectly to" Exodus. Hospital promised to forgive the loan in its entirety if Skolnick maintained a practice in the Hospital's service area for the full three-year term.

¶4    The Employment Agreement between Skolnick and Exodus referenced the Recruiting Agreement between Skolnick and Hospital, and noted that, pursuant to the Recruiting Agreement, Skolnick was "entitled to receive" the "[g]uaranteed [m]onthly [a]mount" from Hospital. The Employment Agreement stipulated that all payments from Hospital to Skolnick "shall be made *directly to*" Skolnick, but obligated Skolnick, each time she received a payment from Hospital, to "endorse over or pay to" Exodus "all such amounts received from Hospital immediately upon receipt." Skolnick and Exodus agreed that the payments Skolnick received from Hospital were to be used by Exodus to pay Skolnick's salary and benefits.

¶5    Skolnick began working for Exodus in early March 2014. For about nine months, the arrangement proceeded uneventfully according to the terms of the agreements—Hospital made payments to Skolnick, who passed along those payments to Exodus, who in turn paid Skolnick's salary and benefits using the funds received from Hospital.

¶6    On December 1, 2014, Skolnick sent Exodus a letter stating that she would be terminating her employment at the end of February 2015. After receiving word that Skolnick intended to terminate her employment with Exodus, Hospital stopped making its guaranteed monthly payments, and Exodus

stopped paying Skolnick for her services.[2] However, Skolnick kept working and generating accounts receivable for Exodus until January 13, 2015, when Exodus sent Skolnick a letter terminating her employment. In the letter, Exodus stated that Hospital had informed Exodus that it would make no further payments pursuant to the Recruiting Agreement, and explained that Exodus considered these events cause to terminate Skolnick's employment. Skolnick never received any compensation for services rendered between November 22, 2014 and January 13, 2015.

¶7     A few weeks after her employment with Exodus ended, Skolnick filed a lawsuit against Exodus, alleging that Exodus had breached the Employment Agreement by failing to pay her.[3] After discovery, both parties moved the court for summary judgment on Skolnick's breach of contract claim. Skolnick argued that the contract required that Exodus pay her for her work, and that she had not been paid. Exodus countered that its obligation to pay Skolnick was contingent on Hospital making the guaranteed monthly payments, and because Hospital had not made any such payments after November 2014, it was not obligated to compensate Skolnick.

¶8     In late December 2016, after briefing and oral argument, the district court granted Skolnick's motion and denied Exodus's. The district court determined that "Skolnick

---

2. The last check Skolnick received from Exodus was dated December 6, 2014, and covered the pay period between November 22 and December 6, 2014, although Exodus stopped payment on this check before Skolnick could access the funds.

3. Hospital also filed suit against Skolnick and Exodus, alleging breach of the Recruiting Agreement, and that case was consolidated with Skolnick's suit against Exodus. Hospital has since settled its claims against both Skolnick and Exodus, and is not a party to this appeal.

performed her duties under [the Employment Agreement], [and] that Exodus did not pay the salary Skolnick earned between November 22, 2014 and January 13, 2015." The court further determined that Exodus's obligation to pay Skolnick was not contingent on payments from Hospital, stating that "[t]he basics of the agreement are that Exodus *shall* pay Skolnick for services rendered. The contract cannot be read, considering it as a whole, to mean that Skolnick would work for no pay if for some reason [Hospital] stopped payment under the Recruitment Agreement." The district court awarded Skolnick damages in the amount of $35,707.92, the amount requested in Skolnick's complaint, and "attorney fees and costs under the Employment Agreement." The court then directed Skolnick's counsel "to provide an affidavit of fees," and stated that Exodus "may respond as to necessity and reasonableness."

¶9     On February 2, 2017, Skolnick filed a motion for attorney fees, a declaration of attorney fees, and a proposed judgment, seeking fees in the amount of $40,894. Eleven days later, on February 13, 2017, Skolnick filed a supplemental declaration, identifying an additional $1,805.50 in fees. On the morning of February 16, the fourteenth day after Skolnick filed her motion, the district court—having seen no opposition to Skolnick's attorney fees motion—entered a final judgment awarding Skolnick $42,489.50 in attorney fees. Later that same day, Exodus filed a motion to set aside that judgment, as well as a memorandum in opposition to Skolnick's motion for attorney fees. Exodus asserted that the judgment had been entered before the time for Exodus to respond to Skolnick's motion had run.

¶10    On February 28, in response to Exodus's motion, the district court entered a ruling and order setting aside its attorney fees award, and reducing the award to $24,300 based on its determination as to the reasonableness of the requested amount of fees. On March 2, Skolnick filed a motion asking the court to reconsider its February 28 ruling, arguing that Exodus's objections to her attorney fees motion had been untimely. On March 27, the district court vacated its February 28 ruling, after

determining that rule 73 of the Utah Rules of Civil Procedure gave Exodus only seven days—rather than fourteen—to object to Skolnick's fees motion. The court reinstated its February 16 judgment, awarding Skolnick $42,489.50 in attorney fees.

## ISSUES AND STANDARDS OF REVIEW

¶11 Exodus now appeals, and asks us to consider two issues. First, Exodus argues that the district court erred by entering summary judgment in Skolnick's favor on her claim for breach of contract. "Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, which we review for correctness." *Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 15, 379 P.3d 1218 (quotation simplified). We review a court's grant of summary judgment "for correctness, with the facts and all reasonable inferences drawn therefrom being viewed in the light most favorable to the nonmoving party." *Id.* ¶ 17 (quotation simplified).

¶12 Second, Exodus asserts that the district court erred by determining that it had only seven—rather than fourteen—days to respond to Skolnick's attorney fees request, and by accordingly refusing to consider its memorandum in opposition and thereafter awarding Skolnick $42,489.50 in attorney fees. "The interpretation of a rule of procedure is a question of law that we review for correctness." *Gardiner v. Taufer*, 2014 UT 56, ¶ 13, 342 P.3d 269 (quotation simplified).

## ANALYSIS

### I

¶13 Exodus's first challenge is to the district court's substantive ruling on Skolnick's claim for breach of contract. Exodus maintains that its contractual obligation to pay Skolnick was contingent on a condition precedent, namely, that Hospital would provide the funds from which Skolnick's salary would be

paid. Exodus argues that, because Hospital stopped making the guaranteed monthly payments, it had no obligation to pay Skolnick. The district court rejected that argument, and so do we.

¶14 In interpreting a contract, we "first look to the writing alone to determine its meaning and the intent of the contracting parties." *Nolin v. S & S Constr. Inc.*, 2013 UT App 94, ¶ 12, 301 P.3d 1026 (quotation simplified). If the language is unambiguous, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (quotation simplified). "A contractual term is ambiguous if, looking to the language of the contract alone, it is reasonably capable of being understood in more than one way such that there are tenable positions on both sides." *Deep Creek Ranch, LLC v. Utah State Armory Board*, 2008 UT 3, ¶ 13, 178 P.3d 886. "But terms are not ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994 (quotation simplified).

¶15 The issue in this case hinges on whether Exodus's obligation to pay Skolnick is contingent on a condition precedent, as Exodus argues, or is a simple covenant, as Skolnick argues. "The distinction between covenants and conditions is an important one because each imposes qualitatively different kinds of obligations." *Id.* ¶ 19. A covenant is "a promise between the parties to the contract about their mutual obligations," and represents "the core bargained-for exchange of an agreement." *Id.* (quotation simplified). "Conditions are different. A condition is an event, not certain to occur, which must occur before performance under a contract becomes due." *Id.* ¶ 20 (quotation simplified).

¶16 Our supreme court has noted "three principal differences between conditions and covenants." *Id.* The first is that "the parties to the contract have no duty to perform until the condition is fulfilled, so the failure of a condition relieves the

parties of all of their contractual duties." *Id.* "Second, the parties have no remedy for breach of contract if a condition is not fulfilled, because at that point there is simply no contract to breach." *Id.* "Third, conditions typically fall outside the control of the parties to the contract, often requiring some environmental trigger (such as 'weather permitting') or action by a third party (such as 'upon the lender's approval') for the contract to begin." *Id.* ¶ 21 (quotation simplified). Covenants, by contrast, "are almost always within the control of the contracting parties." *Id.* (quotation simplified).

¶17 "To determine whether a contractual obligation is a covenant or a condition, we examine the language of the provision in question and the nature of the agreement itself." *Id.* ¶ 22. Often, the language of the contract will provide clues as to whether the obligation in question is conditional. For instance, "express terms like 'unless,' 'on condition that,' 'provided that,' and 'if,' often create conditions." *Id.* ¶ 23. Such language is not talismanic; indeed, "regardless of the precise terms used in the contract, the parties' degree of control over the fulfillment of an obligation remains a significant indication of whether the parties intended a performance obligation to be" conditional. *Id.* (quotation simplified).

¶18 The language of the Employment Agreement strongly indicates that Exodus's obligation to pay Skolnick for her work was not conditional. Indeed, Section 3.2 of that agreement provides that Exodus "shall pay" Skolnick her monthly base compensation in biweekly installments. The phrase "shall pay" is a phrase that usually denotes mandatory, unconditional obligations. *See id.* ¶ 27 (stating that "shall" means having "a duty to," "is required to," or "mandatory," and that the word "shall" in statutes "creates mandatory obligations" (quotation simplified)). And even Exodus acknowledges that there is nothing in Section 3.2 itself—the section containing Exodus's payment obligation—that indicates a conditional obligation. Instead, Exodus argues that, in two places elsewhere in the

broader Section 3, conditional language is used that indicates that Exodus's obligation to pay Skolnick was conditional.

¶19    First, Exodus points to language in the introductory preface to Section 3, which section is captioned "Compensation." In the preface, the parties agreed that, "[s]ubject to the conditions set forth in this Section, [Exodus] shall pay" Skolnick for services rendered. This is certainly conditional language, but because it appears in the introductory sentence prefacing the entire Section 3, it applies to the entire section generally, and not to the payment obligation in Section 3.2 specifically. Section 3 is a long section containing ten different subparts, and providing rules for several different potential eventualities concerning Skolnick's compensation, including a possible switch from simple base salary to "[p]roductivity-[b]ased [c]ompensation," and Skolnick's future possible failure to repay her loan to Hospital. The most plausible meaning of this phrase, in context, is that Exodus should pay Skolnick according to the formula in effect at the time of payment, as set forth in Section 3, which may differ depending on various eventualities. Exodus's position, by contrast, essentially amounts to a request that we construe the introductory language in the preface to Section 3 as transforming every specific direct covenant contained anywhere within Section 3—and there are many—into conditional promises. This is not a plausible reading of the preface.

¶20    Second, Exodus points to language in Section 3.1 stating that the guaranteed monthly payments shall be made by Hospital directly to Skolnick, "[p]rovided" that Skolnick "shall then endorse over or pay to [Exodus] all such amounts received from Hospital." This is also conditional language, but it is limited to a specific scenario: Skolnick's obligation to "endorse over or pay to" Exodus the payments she receives from Hospital is conditioned on Skolnick actually receiving the payments from Hospital. If Skolnick does not actually receive any payments from Hospital, she is not independently obligated to make payments to Exodus. This conditional language has nothing

directly to do with Exodus's specific obligation, set forth in a different section, to pay Skolnick for services rendered.

¶21    Indeed, the conditional language used in Section 3.1 regarding Skolnick's obligation to pass along Hospital's payments to Exodus demonstrates that the parties knew how to make specific obligations within Section 3 conditional when that was their intent. *See Mind & Motion*, 2016 UT 6, ¶ 29 (stating that the parties' use of truly conditional language elsewhere in the agreement—but not in the phrase at issue—demonstrated that the parties "understood how to consciously identify a condition precedent when they so desired"). The parties chose not to use such language in Section 3.2—when they easily could have done so, had they so intended—to condition Exodus's obligation to pay Skolnick upon Hospital's payment of the guaranteed monthly amount.

¶22    Finally, Exodus asserts that the district court's interpretation of the agreement fails to give effect to all of its provisions, and specifically argues that Section 3.1 of the agreement has been rendered superfluous. We disagree. Section 3.1 retains vital importance—it indicates that, when received, the Hospital's guaranteed monthly payment is to be used to pay Skolnick's salary and benefits, and that Skolnick is not permitted to simply keep those payments for herself but, rather, is obligated to remit those payments to Exodus so that they can be used for that purpose. It does no violence to that provision to conclude that, even if Hospital's payments do not come in, Exodus is still obligated to pay Skolnick for services rendered.[4]

---

4. Exodus also argues in its brief that Hospital's "failure to provide [g]uaranteed [m]onthly [a]mount payments frustrated the purpose" of the two agreements and therefore "excused Exodus'[s] performance." Frustration of purpose is one of "[t]hree distinct grounds for discharge of the obligor's duty" under a contract. *See* Restatement (Second) of Contracts, Chapter

(continued…)

¶23    For all of these reasons, we reject Exodus's argument that its obligation to pay Skolnick for her services was contingent on receiving the guaranteed monthly payment from Hospital. Under the plain language of the Employment Agreement, Exodus made a covenant to pay Skolnick. Its failure to do so constituted a breach of contract. We therefore affirm the district court's grant of summary judgment in Skolnick's favor.

II

¶24    Exodus's second challenge is to the district court's interpretation and application of rule 73 of the Utah Rules of Civil Procedure. Exodus argues that the court erred by allowing Exodus only seven days to object after Skolnick filed a motion to recover attorney fees. We find this argument persuasive.

¶25    Rule 73(d) sets forth an expedited procedure for litigation regarding the amount of attorney fees, if "liability for fees" has already been decided. *See* Utah R. Civ. P. 73(d). Under that procedure, a party seeking fees may opt not to file a motion and, instead, may rely only on the filing of "an affidavit and a

---

(…continued)
11 Introductory Note (Am. Law Inst. 1981). "Frustration of purpose differs from the defense of impossibility only in that performance of the promise, rather than being impossible or impracticable, is instead pointless." *Tech Center 2000, LLC v. Zrii, LLC*, 2015 UT App 281, ¶ 32, 363 P.3d 566 (quotation simplified). It was certainly not impracticable for Exodus to pay Skolnick; indeed, Exodus makes no argument that it lacked the ability to pay Skolnick for her services. Likewise, it was certainly not "pointless" for Exodus to pay Skolnick—after all, she continued to work for Exodus and generate accounts receivable on its behalf. Accordingly, Exodus cannot demonstrate the elements of a "frustration of purpose" defense, and therefore we conclude that Exodus was not relieved of its contractual obligations due to frustration of purpose.

proposed order," and if that procedure is followed, the opposing party must file any objection to the "claimed amount" of fees "within 7 days after the affidavit and proposed order are filed." *Id.* Because it had already decided, in its summary judgment ruling, that Skolnick was entitled to an award of attorney fees, the district court relied upon rule 73(d) in determining that Exodus had only seven days—rather than fourteen—to object to Skolnick's claimed amount of attorney fees.

¶26 Exodus asserts, however, that the district court's reliance upon rule 73(d), on the facts of this case, was erroneous, because Skolnick did more than simply file an affidavit and a proposed order: Skolnick also elected to file a separate motion for attorney fees. Exodus asserts that, pursuant to rule 7(d)(1) of the Utah Rules of Civil Procedure, a party has fourteen days—rather than seven—to file a memorandum opposing any motion, and argues that its opposition was therefore timely. *See* Utah R. Civ. P. 7(d)(1).

¶27 In response, Skolnick asserts that rule 73(a) requires that she file a motion, and not just a declaration and a proposed judgment. *See* Utah R. Civ. P. 73(a) (stating that "[a]ttorney fees must be claimed by filing a motion"). Skolnick argues that she filed a motion for attorney fees, rather than just a declaration and a proposed judgment, simply to fulfill this requirement, and that, because liability for fees had already been decided, rule 73(d) controls the timing for any response to her motion for attorney fees.

¶28 We find Exodus's argument more persuasive, for two reasons. First, Exodus's interpretation of rule 73 is in harmony with the mandates of rule 7. As Exodus points out, that rule allows fourteen days—rather than seven—for nonmoving parties to file memoranda in opposition to motions, *see* Utah R. Civ. P. 7(d)(1), but allows only seven days for parties to "object to the form of [a] proposed order," *see id*. R. 7(j)(4). Exodus's reading of rule 73 imports this basic dichotomy—fourteen days for motions, seven days for proposed orders—from rule 7 into

rule 73, and harmonizes the two rules in a way that Skolnick's interpretation does not. If a party files a *motion* for attorney fees pursuant to rule 73(a), the opposing party (pursuant to rule 7(d)(1)) has fourteen days to file a memorandum in opposition. On the other hand, if liability for fees has already been decided, a party can elect to take advantage of the expedited process, and may obtain quantification of previously-awarded attorney fees simply by filing a declaration and a proposed order; if a party elects to use this route, the opponent is allowed only seven days to respond.[5]

¶29  Second, and relatedly, we note that Skolnick requested attorney fees in her original motion for summary judgment. In our view, this request fulfilled the requirement of rule 73(a) that "[a]ttorney fees must be claimed by filing a motion"; there was no need for Skolnick to later file a second, separate motion for attorney fees, after the court had granted her summary judgment and stated that she was entitled to fees. Indeed, the court expressly stated, in its summary judgment order, that "Skolnick is entitled to attorney fees and costs under the Employment Agreement" and invited Skolnick to take advantage of the expedited process, stating that "[c]ounsel is to provide an affidavit of fees" and a "suggested form of Judgment."

¶30  We recognize that Skolnick may have filed the separate February 2 motion for attorney fees out of an abundance of caution, and in an effort to make sure she complied with rule 73(a). But whatever her motivation, the fact that she filed a

---

5. In our view, this interpretation is consistent with the intentions of the rule's drafters, as expressed in the language of rule 73, although we acknowledge that the language of the rule could potentially be worded more clearly. If our interpretation is not in harmony with the intent of the rule's drafters, we encourage the supreme court, through its Advisory Committee on the Rules of Civil Procedure, to consider revising the rule.

separate motion—rather than merely a declaration and a proposed judgment, as the court asked her to do—meant that, pursuant to rule 7(d)(1), Exodus had fourteen days to file any opposition to that motion. Therefore, the opposition memorandum that Exodus filed on February 16 was timely, and the court erred by determining otherwise.

¶31 In the unusual procedural posture of this case, the district court actually considered and ruled upon Exodus's challenge to Skolnick's claimed amount of attorney fees and, in a (subsequently vacated) February 28 ruling, determined that a "reasonable" amount of fees for Skolnick to be awarded under the circumstances was $24,300. Neither party challenges the district court's reasonableness determination on appeal, not even as an alternative argument. Accordingly, we see no need to remand the case for further proceedings regarding the reasonableness of Skolnick's claimed fees; instead, we simply vacate the court's March 27 order, due to the court's erroneous ruling that Exodus's opposition memorandum was untimely, and reinstate the district court's February 28 ruling regarding the reasonableness of Skolnick's attorney fees, and remand for entry of judgment in keeping with that ruling.

III

¶32 Finally, we must consider whether, and to what extent, Skolnick is entitled to recover the attorney fees she incurred on appeal. "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (quotation simplified).

¶33 When attorney fees are awarded under a contractual provision, the award "is allowed only in accordance with the terms of the contract." *See R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 17, 40 P.3d 1119. The Employment Agreement states that, "[i]n the event of a dispute between the parties arising under this Agreement, the party prevailing in such dispute shall be entitled

to collect such party's costs from the other party, including without limitation court and investigation costs and reasonable attorneys' fees and disbursements." In ordinary situations, "determining the 'prevailing party' for purposes of awarding fees and costs is quite simple. Plaintiff sues defendant for money damages; if plaintiff is awarded a judgment, plaintiff has prevailed." *Myrah v. Campbell*, 2007 UT App 168, ¶ 32, 163 P.3d 679 (quotation simplified). However, when a party "did not retain all of their trial victory on appeal . . . some adjustment may be necessary so that they do not recover fees attributable to issues on which they did not prevail." *Valcarce*, 961 P.2d at 319 (quotation simplified); *cf. Gilbert Dev. Corp. v. Wardley Corp.*, 2010 UT App 361, ¶ 52, 246 P.3d 131 (stating that "[i]f attorney fees are recoverable by contract, a party is entitled only to those fees attributable to the successful vindication of contractual rights" (quotation simplified)).

¶34  In this appeal, Skolnick clearly prevailed on the issue we discussed above, in Part I, regarding the meaning of the payment provision in the Employment Agreement. But we cannot plausibly conclude that Skolnick prevailed on the attorney fees and rule interpretation issue discussed in Part II; indeed, on that issue, Exodus substantially prevailed. We therefore grant Skolnick's request for fees on appeal insofar as it pertains to her successful defense of the interpretation of the Employment Agreement, but deny her request for fees on appeal incurred in the defense of her interpretation of rule 73. *See generally Dale K. Barker Co., P.C. v. Bushnell*, 2010 UT App 189, ¶ 19, 237 P.3d 903 (awarding fees incurred on appeal for the "successful defense of the [district] court's breach of contract determinations" but declining to award fees "associated with [the party's] unsuccessful arguments related to the [district] court's original determination of attorney fees and costs"). Accordingly, we remand this case to the district court for a determination of the amount of attorney fees and costs reasonably incurred and recoverable on appeal.

CONCLUSION

¶35 We conclude that Exodus's obligation to pay Skolnick was not subject to any condition precedent, and therefore affirm the district court's grant of summary judgment in favor of Skolnick on her claim for breach of the Employment Agreement. We also affirm the district court's determination that Skolnick is entitled to recover attorney fees pursuant to the Employment Agreement. The district court erred, however, when it determined that rule 73 provided Exodus only seven days to respond to Skolnick's separately-filed motion for attorney fees, and therefore the district court should have considered Exodus's opposition memorandum. Accordingly, we vacate the district court's March 27 order, and reinstate the district court's February 28 ruling and order, and remand the case for entry of judgment in keeping with that order, and for quantification of Skolnick's attorney fees incurred on the successful portion of her defense of this appeal.

———————